**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PLAYBOY ENTERPRISES
INTERNATIONAL, INC.,

      Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A TO THE COMPLAINT,

      Defendants.

Civil Action No. 26-cv-04487

**COMPLAINT**

Playboy Enterprises International, Inc. ("Plaintiff" or "Playboy"), by and through its undersigned counsel, hereby files this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

**I.     Jurisdiction And Venue**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) because each of the Defendants directly targets consumers in the United States, including New York, through means including, but not necessarily limited to, the fully interactive

1

commercial internet stores operating under the aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.    This Court may exercise personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A), which permits service under New York's long-arm statute, C.P.L.R. § 302(a)(1) and 302(a)(3)(i) and (ii), or alternatively pursuant to Fed. R. Civ. P. 4(k)(2), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District, derive substantial revenue from business transactions in New York and in this Judicial District, and otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants comports with due process and does not offend traditional notions of fair play and substantial justice.

4.    In addition, Defendants' illegal counterfeiting and infringement actions caused and continue to cause injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect their actions to have consequences in New York and this Judicial District and that they would be required to appear and answer for such actions..

5.    For example, Seller Aliases accept orders of counterfeit products from and offer to ship to New York addresses located in this Judicial District.

[REMOVED FROM PUBLIC DOCKET]

6.    Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York and in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal and Shop Pay, as well as other yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective

2

officers, employees, agents, servants, and all persons in active concert or participation with any of them. It is through the Defendants' User Accounts that consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, communicate with Defendants regarding their listings for counterfeit products, and place orders for, receive invoices for, and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), thereby establishing and sustaining regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.    **Parties**

1.    Plaintiff Playboy Enterprises International, Inc. is a Delaware company with its principal place of business in Los Angeles, California.

2.    The PLAYBOY brand is one of the most recognizable brands in the world, driving millions of dollars annually in global consumer spending with products and content available in approximately 180 countries. The company provides consumers around the world with products, content, and experiences that encourage the pursuit of pleasure and promote sexual health and wellness. Playboy Enterprises International, Inc. is the official source of PLAYBOY products.

3.    Plaintiff is the owner of (among others) U.S. Trademark Registration Nos. 4871282; 5997751; 791734; 1040491; 1320822; 2469441; 2632523; 2978139; 3140250; 3406607; 3624653; 3959511; 4280121; 4560637; 4886163; 4973564; 5138230; 5182173; 5210800; 5392230; 5423595; 5938488; 6042869; 6901231; 4495246; 2663899; 4983730; 3194099; 3624654; 2802023; 2177521; 3406608; 5482507; 4280122; 2848639; 759207; 5938489; 3963330; 5530694; 791333; 3308169; 2666917; 6004261; 1058294; 728889; 784504; 5350998; 5301904; 984548; 1908471; 3332339; 6504260; 4316000; 5317383  (collectively, the "PLAYBOY Marks").

3

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| MR. PLAYBOY | 4871282 | Class 025: shirts; T-shirts |
| MR. PLAYBOY | 5997751 | Class 016: magazines in the fields of adult entertainment, entertainment, the sports industry and social media |
| PLAYBOY | 791734 | Class 016: PLAYING CARDS |
| PLAYBOY | 1040491 | Class 009: SUNGLASSES |
| PLAYBOY | 1320822 | Class 025: Footwear |
| PLAYBOY | 2469441 | Class 021: Beverage glassware, cocktail shakers |
| PLAYBOY | 2632523 | Class 016: Posters; calendars; trading cards |
| PLAYBOY | 2978139 | Class 009: cell phone faceplates and covers, not of paper |
| PLAYBOY | 3140250 | Class 025: Lingerie, sleepwear, loungewear, wraps and robes |
| PLAYBOY | 3406607 | Class 006: Metal key fobs; Class 020: Pillows, non-metallic bottle stoppers, non-metal and non-leather key chains, non-metal key fobs, furniture, mirrors, picture frames, figurines of plastic, stuffed animals |
| PLAYBOY | 3624653 | Class 024: Shower curtains, bed blankets, comforters, towels, bed linens, throws |
| PLAYBOY | 3959511 | Class 010: Condoms |
| PLAYBOY | 4280121 | Class 025: Halloween costumes and masks sold in connection therewith; Jeans; Masquerade costumes and masks sold in connection therewith; Pullovers; Smoking jackets |
| PLAYBOY | 4560637 | Class 009: video game software for cellular phones, mobile devices, personal computers, and tablets; electronic game software; computer game programs; downloadable computer game programs; interactive game programs; interactive game software; downloadable software in the nature of mobile applications |
| PLAYBOY | 4886163 | Class 033: wine; sparkling wine; champagne; vodka; liquor; alcoholic beverages except beers |
| PLAYBOY | 4973564 | Class 014: Body jewelry; Body-piercing rings; Body-piercing studs; Bracelets; Charms; Clocks; Costume jewelry; Cuff links; Diamond jewelry; Earrings; Fancy keyrings of precious metals; Gemstone jewelry; Jewel pendants; Jewelry; Jewelry and imitation jewelry; Jewels; Key chains as jewellery; Key chains of precious metal; Necklaces; Pendants; Pins being jewelry; Rings; Watches |

4

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| PLAYBOY | 5138230 | Class 021: bottle openers, flask, mugs, reusable stainless steel water bottles sold empty |
| PLAYBOY | 5182173 | Class 009: Cell phone battery chargers, headphones |
| PLAYBOY | 5210800 | Class 025: Hats |
| PLAYBOY | 5392230 | Class 014: Watches |
| PLAYBOY | 5423595 | Class 005: Personal lubricants; Personal sexual lubricants; Silicone-based personal lubricants; Water-based personal lubricants; Class 034: Ashtrays; Cigarette lighters not of precious metal; Pipe pouches; Smokeless cigarette vaporizer pipe; Smoking pipes; Tobacco pipes |
| PLAYBOY | 5938488 | Class 005: Liquid nutraceuticals for use as a dietary supplement; herbal supplements |
| PLAYBOY | 6042869 | Class 003: Cosmetics |
| PLAYBOY | 6901231 | Class 009: Non fungible tokens, namely, downloadable image files containing artwork and avatars authenticated by non-fungible tokens (NFTs); Downloadable digital media, namely, downloadable multimedia files containing artwork relating to artwork, images and avatars authenticated by non-fungible tokens (NFTs) |
| PLAYBOY PLUS | 4495246 | Class 009: Downloadable electronic publications in the nature of magazines in the field of adult entertainment; Downloadable video recordings featuring adult entertainment; downloadable software in the nature of mobile applications for accessing, viewing, interacting with and downloading content from electronic magazines and websites |
| PLAYMATE | 2663899 | Class 016: calendars |
| PLBY | 4983730 | Class 025: shirts; T-shirts; sweat shirts; hoodies; loungewear |
| | 3194099 | Class 025: Bathrobes; Belts; Coats; Dresses; Footwear; Head wear; Hosiery; Jackets; Jogging suits; Lingerie; Loungewear; ((Neckwear;)) Pants; Shirts; Shorts; Skirts; Sleepwear; Socks; Stockings; Sweaters; T-shirts; Tops; Undergarments |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | 3624654 | Class 024: Shower curtains, bed blankets, comforters, towels, bed linens, throws |
| | 2802023 | Class 014: Jewelry, namely, necklaces, bracelets, body piercing jewelry and earrings |
| | 2177521 | Class 014: jewelry, namely, rings for the finger |
| | 3406608 | Class 006: Metal key fobs; Class 020: Pillows, corks, non-metallic bottle stoppers, mirrors, picture frames, figurines of plastic |
| | 5482507 | Class 005: Personal lubricants; Personal sexual lubricants; Silicone-based personal lubricants; Water-based personal lubricants; |
| | 4280122 | Class 025: Garter belts; Halloween costumes and masks sold in connection therewith; Jeans; Masquerade costumes and masks sold in connection therewith; Pullovers; Sleep masks; Smoking jackets; Sweat pants; Sweat shirts |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | 2848639 | Class 021: Beverageware, namely mugs |
| | 759207 | Class 014: Cuff Links, Tie Tacks, Earrings, Necklaces, Key Chains, Bracelets, and Pins. |
| | 5938489 | Class 005: Liquid nutraceuticals for use as a dietary supplement; herbal supplements |
| | 3963330 | Class 010: Condoms |
| | 5530694 | Class 028: Golf equipment namely, head covers for golf clubs, golf balls |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | 791333 | Class 016: PLAYING CARDS |
| | 3308169 | Class 009: Cellular telephone accessories, namely cell phone faceplates, cell phone straps and covers, mobile phone chargers |
| | 2666917 | Class 016: calendars, and trading cards |
| | 6004261 | Class 025: Clothing, namely, shirts, t-shirts |
| | 1058294 | Class 009: SUNGLASSES |

8

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | 728889 | Classes 010, 025, 026: Men's and Women's Shirts. |
| | 784504 | Class 024: BEACH TOWELS |
| | 5350998 | Class 014: Clocks and watches |
| | 5301904 | Class 025: caps; hats; headwear; hoods; jackets; loungewear; pants; shirts; sweat shirts; t-shirts |
| | 984548 | Class 025: Articles Of Men's And Women's Clothing - Namely, Shirts, Sleepwear, Sweaters, Warm-Up Shirts |
| | 1908471 | Class 018: tote bags, suitcases and garment bags for travel |
| | 3332339 | Class 016: Calendars |

9

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | 6504260 | Class 025: Shirts; T-shirts |
| | 4316000 | Class 003: perfumery, deodorants and shower gel |
| | 5317383 | Class 003: Perfumery, namely, perfumes, fragrances, eau de toilette, eau de cologne, deodorants, namely, personal deodorants and antiperspirants for personal use; body wash; shampoos, bath gels, shower gels |

4.      The PLAYBOY Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the PLAYBOY Marks pursuant to 15 U.S.C. § 1057(b).

5.      True and correct copies of the registration certificates for the PLAYBOY Marks asserted in this action are attached as Exhibit 1.

6.      The PLAYBOY Marks have been the subject of substantial and continuous marketing and promotion by Plaintiff.  Plaintiff has and continues to widely market and promote the PLAYBOY Marks in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the PLAYBOY website and social media sites, and point of sale materials.

10

7.      Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the PLAYBOY Marks. As a result, goods and services associated with the PLAYBOY Marks are recognized and exclusively associated by consumers and the public as being products originating from Plaintiff.

8.      The PLAYBOY Marks are valid, subsisting, and in full force and effect. The registrations of the PLAYBOY Marks constitute prima facie evidence of their validity pursuant to 15 U.S.C. §1057(b).

9.      The PLAYBOY Marks have been used in commerce continuously for more than five consecutive years since being registered and have never been abandoned and are, therefore, incontestable pursuant to 15 U.S.C. §1065.

10.     The PLAYBOY Marks have achieved the status of famous distinctive marks and, pursuant to 15 U.S.C. §1125(c)(1), Plaintiff is therefore entitled to  injunctive relief against the Defendants without proof of likelihood of confusion, competition or actual economic injury.

11.     Plaintiff has made efforts to protect its interests in and to the PLAYBOY Marks. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the PLAYBOY Marks without the express written permission of Plaintiff.

12.     Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the

PLAYBOY Products to consumers within the United States, including New York and in this Judicial District.

III.    **Factual Background**

13.        Prior to the rise in popularity of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has rendered measures such as takedown demand procedures seeking the removal of infringing or counterfeit products from the market ineffective and inadequate. Continued use of the traditional enforcement methods would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is now occurring over the Internet. The aggregate effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights against the hundreds of anonymous defendants that are selling illegal counterfeit and infringing products at prices below the cost of an original, authentic PLAYBOY Product:

**PLAINTIFF'S OFFICIALLY LICENSED PRODUCT**



https://shop.playboy.com/collections/womens

**COUNTERFEIT/INFRINGING LISTINGS**

[REMOVED FROM PUBLIC DOCKET]

14.    The exemplar infringing listings depicted above evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products.

15.    In a clear effort to unlawfully profit through appropriation of the goodwill Plaintiff has amassed through consistent investment in its valuable PLAYBOY Marks, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authentic PLAYBOY Products.

13

16.    Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

17.    Defendants' systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

18.    Efficient operation of Defendants' unlawful counterfeiting scheme, producing and selling infringing products at prices substantially lower than Plaintiff's costs to produce its authentic goods, could not be accomplished without a high degree of coordination and scale of production among the Defendants to spread costs. As a 2020 Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network.[1]

19.    The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, demonstrating the existence of a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

14

and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

20.    In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic.[2]

21.    Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ no normal business nomenclature and, instead, appear to be entirely contrived or, if a company name that appears to be legitimate is used, online research reveals that there is no address provided for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine PLAYBOY Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's PLAYBOY Products that illegally use the PLAYBOY Marks ("Infringing Products").

22.    Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 2.

---

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

23.     The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

24.     The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

25.     The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations to deter Plaintiff from discovering Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

26.     Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Use of such Seller Alias registration patterns is one of many common tactics employed by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

16

27.    In addition to operating under multiple fictitious names, Defendants systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

28.    A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in de minimis shipments, that is, shipments valued at $800 of less. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2.[3]

29.    Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of so-called payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

30.    Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

31.     Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately counterfeited Plaintiff's PLAYBOY Marks in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this Judicial District of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

## Count I - Trademark Infringement and Counterfeiting
### (15 U.S.C. § 1114)

32.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

33.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered PLAYBOY Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The PLAYBOY Marks are inherently distinctive and/or have acquired secondary meaning through Plaintiff's extensive use and promotion. Due to Plaintiff's substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiff and authentic PLAYBOY Products offered, sold, or marketed under the PLAYBOY Marks.

34.     Without Plaintiff's authorization or consent, with actual knowledge or willful blindness to Plaintiff's well-established and prior rights in the PLAYBOY Marks and with knowledge that Defendants' Infringing Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the PLAYBOY Marks and used spurious designations that are identical with, or substantially indistinguishable from, the PLAYBOY Marks

18

on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

35.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiff's exclusive rights in and to the PLAYBOY Marks through their systematic and deliberate participation in such unlawful activities.

36.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the PLAYBOY Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, or deception among consumers as to the origin, sponsorship, or approval of the Infringing Products, causing consumers to believe that the Infringing Products originate from, are sponsored by, approved by, or are otherwise associated with Plaintiff, thereby obtaining unjust enrichment and profits to which they are not legally entitled.

37.     Defendants' unauthorized use of the PLAYBOY Marks on or in connection with the Infringing Products was done with notice and actual knowledge that such use was not authorized or licensed by Plaintiff, and with specific intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiff has developed in the PLAYBOY Marks through years of quality control and significant investment.

19

38.    Defendants' actions constitute willful counterfeiting of the PLAYBOY Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiff to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

39.    Defendants' continued, knowing, and willful use of the PLAYBOY Marks without Plaintiff's consent or authorization constitutes intentional infringement of the PLAYBOY Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

40.    Plaintiff has no adequate remedy at law, and if these Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the PLAYBOY Marks, for which there is no adequate remedy at law.

41.    The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit PLAYBOY Products.

### Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

42.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43.    Defendants' promotion, marketing, offering for sale, and sale of infringing PLAYBOY  Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

44.    By using the PLAYBOY Marks in connection with the sale of unauthorized Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized Infringing Products.

45.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46.     Upon information and belief, Defendants' aforementioned wrongful actions were done knowingly, deliberately, willfully, and with the intent to cause confusion, to cause mistake, and to deceive the purchasing public, and were undertaken with the intent to trade on the goodwill and reputation of Plaintiff, its PLAYBOY Products, and PLAYBOY Marks.

47.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will suffer immediate and irreparable harm to its reputation, business relationships, and the goodwill associated with its brand and trademarks.

## IV.    <u>Prayer For Relief</u>

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the PLAYBOY Marks or any reproductions, copies, colorable imitations, or confusingly similar marks thereof in any manner in connection with the distribution, marketing, advertising, promotion, offering for sale, or sale of any product that is not an authorized PLAYBOY Product or is not authorized by Plaintiff to be sold in connection with the PLAYBOY Marks;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and not approved by Plaintiff for sale under the PLAYBOY Marks;

c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit and Infringing PLAYBOY Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing the PLAYBOY Marks and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing Products or related products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the PLAYBOY Marks;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the PLAYBOY Marks;

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiff,

which bear the PLAYBOY Marks, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiff, which bear the PLAYBOY Marks; and

c.  take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)  That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5)  In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6)  For Judgment in favor of Plaintiff against Defendants that they have:

a.  willfully infringed Plaintiff's rights in its federally registered trademarks; and

b.  otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7)  That Plaintiff be awarded its reasonable attorneys' fees and costs; and

23

8)      Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Dated: May 28, 2026                                        Respectfully submitted,

                                                           */s/ Shengmao Mu*
                                                           Shengmao Mu
                                                           NY No. 5707021
                                                           **WHITEWOOD LAW PLLC**
                                                           57 West 57th Street, 3rd and 4th Floors
                                                           New York, NY, 10019
                                                           Telephone: (917) 858-8018
                                                           Email: smu@whitewoodlaw.com

                                                           *Counsel for Plaintiff*